## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

TRUSTEES OF THE CHICAGO           )
REGIONAL COUNCIL OF               )
CARPENTERS PENSION FUND,          )
CHICAGO REGIONAL COUNCIL OF       )
CARPENTERS WELFARE FUND, and      )
CHICAGO REGIONAL COUNCIL OF       )
APPRENTICE & TRAINEE PROGRAM      )
FUND,                             )
                                  )
            Plaintiffs,           )          Case No: 09-CV-4991
                                  )
            v.                    )          Judge Joan H. Lefkow
                                  )
M.J. ANDERSON INTERIORS, INC.,    )
                                  )
            Defendant             )
                                  )
_____ )
                                  )
            v.                    )
                                  )
THE PATTERSON LAW FIRM LLC, and   )
TRUSTEES OF THE CHICAGO           )
PAINTERS PENSION FUND,            )
                                  )
            Intervenors.          )
                                  )
                                  )

## OPINION AND ORDER

Plaintiffs, the Trustees of the Chicago Regional Council of Carpenters Pension Fund, the

Chicago Regional Council of Carpenters Welfare Fund, and the Chicago Regional Council of

Carpenters Apprentice and Trainee Program Fund ("the Carpenters"), filed an action to collect

outstanding pension contributions from M.J. Anderson Interiors, Inc. ("M.J. Anderson") and

obtained judgment in their favor in the amount of $118,999.30.  (Dkt. #16.)  The Patterson Law

Firm LLC represented M.J. Anderson in an unrelated action against A.J. Maggio Company

("A.J. Maggio") in the Nineteenth Judicial Circuit Court, Lake County, Illinois and obtained a

settlement for $30,000 ("the Lake County Action"). On October 2, 2012, the Carpenters filed a

motion for turnover against A.J. Maggio. (Dkt. #21.) In it, the Carpenters argued that they had

obtained a perfected lien on M.J. Anderson's property by serving a citation to discover assets on

A.J. Maggio on February 8, 2010. Shortly thereafter, the Patterson Law Firm moved to

intervene, opposing the motion. (Dkt. #26.)[1] A.J. Maggio placed the disputed funds with the

Clerk of the Circuit Court and filed an interpleader action against the Carpenters, the Internal

Revenue Service ("IRS"), the Patterson Law Firm, and the Trustees of the Chicago Painters

Pension Fund. (*See* 12-CV-9483, Dkt. #2, Ex. A.)[2] This case was removed to federal court,

consolidated with the present action, and the funds at issue were placed with the Clerk of this

court. The issue currently before the court is which entity is entitled to the funds. For the

reasons that follow, the Carpenters are entitled to the money.

## BACKGROUND

I.    **The Carpenter's Lien**

On February 8, 2010, the Carpenters served a third party citation to discover assets on

A.J. Maggio requesting that Raymond S. Maggio personally appear to give deposition testimony

concerning any potential assets that his company held for the judgment debtor, M.J. Anderson.

(Dkt. #50, Ex. A.) Shortly thereafter, counsel for A.J. Maggio, Matthew Sullivan, contacted

---

[1] Although the Patterson Law Firm has fully participated in briefing and arguing this matter, its motion to intervene remains pending. (Dkt. #26.) It is granted. The court notes that the attorney of record for both the Patterson Law Firm and M.J. Anderson is the same, and indeed, the submissions on behalf of both parties are nearly identical. (*See* Dkts. #25 & #26; #32 & #33; #47 & #48.) Because M.J. Anderson does not maintain any claim to the funds the court will only consider the briefs submitted by the Carpenters, the IRS, and the Patterson Law Firm in resolving the present motion.

[2] The Chicago Painters Pension Fund has since relinquished any claim to the settlement funds.

counsel for the Carpenters, Daniel P. McAnally, and informed him that the amount due to M.J. Anderson from A.J. Maggio was currently being litigated in the Lake County Action. As such, the parties agreed to excuse the appearance of Mr. Maggio for the time being and to allow the citation to remain in effect until the Lake County Action was resolved. (Dkt. #50, Ex. B, McAnally Affidavit.) Mr. McAnally never spoke with Mr. Maggio, and Mr. Maggio never appeared for the citation examination. In September 2012, Mr. McAnally again spoke with Mr. Sullivan who informed him that the Lake County Action had been resolved and there was money available subject to the citation. (*Id.*) On October 2, 2012, the Carpenters filed the present motion.

## II.     The IRS's Tax Lien

The IRS represents that it assessed a tax delinquency against M.J. Anderson on April 5, 2010.[3] On October 4, 2010, the IRS recorded a tax lien against M.J. Anderson with the Illinois Secretary of State. (*See* Dkt. #26 page 6 of 20.) On January 4, 2011, the IRS served a Notice of Levy to A.J. Maggio in the amount of $111,799.22, which included interest and late payment penalties running to February 3, 2011. (12-CV-9483, Dkt. #2, Ex. A4.) The notice instructed A.J. Maggio "that there is a lien for the amount that is owed" and that "[t]his levy requires you to turn over to us [M.J. Anderson's] property and rights to property . . . that you have or which you are already obligated to pay this person." (*Id.*)

---

[3] A copy of this assessment is not of record.

### III.    The Patterson Law Firm's Lien

The Patterson Law Firm represented M.J. Anderson in the Lake County Action for three years through settlement.[4]  It states that it executed an attorney's lien on the settlement fund, which it served upon A.J. Maggio on or about February 21, 2012.  (Dkt. #48, Ex. C.)  The Patterson Law Firm argues that its attorney's lien takes superpriority over the IRS's tax lien under 26 U.S.C. § 6323(b)(8), which protects an attorney's lien filed under state law against a filed federal tax lien.  The Patterson Law Firm also argues that it is entitled to recover its fees under the common fund doctrine, which allows an attorney who recovers a common fund for the benefit of others to obtain a reasonable attorney's fee from the fund as a whole.  *See Scholtens* v. *Schneider*, 671 N.E.2d 657, 662, 173 Ill. 2d 375, 219 Ill. Dec. 490 (1996).

## ANALYSIS

### I.    Date of Perfection

#### A.    The Carpenters

The Carpenters argue that they obtained a perfected lien upon M.J. Anderson's property by properly serving A.J. Maggio with a citation to discover assets on February 8, 2010.  Supplementary proceedings are governed by 735 Ill. Comp. Stat. 5/2-1402 and Illinois Supreme Court Rule 277.  These proceedings allow a judgment creditor, such as the Carpenters, to "[examine] the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment . . . ."  735 Ill. Comp. Stat. 5/2–1402(a).  The proper service of a citation to discover assets upon a third party creates a lien on "all personal

---

[4]  The Patterson Law Firm represents that it billed 260 hours on the Lake County Action and incurred over $2,526.36 in costs.

property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation." 735 Ill. Comp. Stat. 5/2-1402(m)(2). This lien is considered perfected on the date of service of the citation. *Cacok* v. *Covington*, 111 F.3d 52, 54 (7th Cir. 1997); *In re Cannell*, No. 12-71705, 2013 WL 2467787, at *4 (C.D. Ill. June 7, 2013); *W. Bend Mut. Ins. Co.* v. *Belmont State Corp.*, No. 09 C 354, 2010 WL 5419061, at *6 (N.D. Ill. Dec. 23, 2010). Under Illinois Supreme Court Rule 277(f), a supplementary proceeding to enforce a judgment "terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner." Ill. Sup. Ct. R. 277(f).

Applying this rule, the Carpenters obtained a perfected lien on M.J. Anderson's property on February 8, 2010 upon service of a citation to discover assets on third party respondent A.J. Maggio. The IRS and the Patterson Law Firm argue that, by way of Rule 277(f), this lien automatically terminated six months after Mr. McAnally spoke with Mr. Sullivan and agreed to stay citation proceedings pending the resolution of the Lake County Action. Neither the IRS nor the Patterson Law Firm, however, provides any authority to support their position that an informal conversation between attorneys qualifies as a "personal appearance" under the rule. Rather, the case law indicates that something more formal is required. *See*, *e.g.*, *Textile Banking Co.* v. *Rentschler*, 657 F.2d 844, 852 (7th Cir. 1981) ("The appearance contemplated by this statute is clearly more than mere physical presence within the judicial district."); *United States* v. *Rogan*, No. 02 C 3310, 2008 WL 4853478, at *2 (N.D. Ill. Nov. 3, 2008) (appearance through

counsel and production of documents did not constitute "personal appearance" within the meaning of the rule); *Flip Side Prods., Inc.* v. *Jam Prods., Ltd.*, No. 82 C 3684, 1990 WL 186777, at *3 (N.D. Ill. Nov. 8, 1990) (six-month cutoff did not begin to run until citation respondents personally appeared for depositions); *Windcrest Dev. Co.* v. *Giakoumis*, 834 N.E.2d 610, 614, 359 Ill. App. 3d 597, 296 Ill. Dec. 53 (2005) (citation respondent first appeared when it filed a written answer to the citation).

As recognized by the court in *TM Ryan Co.* v. *5350 S. Shore, L.L.C.*, 836 N.E.2d 803, 810, 361 Ill. App. 3d 352, 297 Ill. Dec. 72 (2005), "[t]he purpose of the six-month deadline is to prevent property from being encumbered by judgment liens indefinitely and to protect debtors from harassment by their creditors."  Where, as is here, "the parties agree[] to postpone the deposition past the date in the citation, there is no violation of the six-month limitation."  *Id.* at 811.  The court concludes, therefore, that the Carpenters obtained a perfected lien as to the property held by A.J. Maggio on February 8, 2010, and that because Mr. Maggio failed to personally appear, this lien did not automatically terminate pursuant to Rule 277(f).

### B.      The IRS

The IRS argues that it obtained a perfected tax lien on M.J. Anderson's property on October 4, 2010 when it recorded a notice of tax lien with the Illinois Secretary of State.  Under 26 U.S.C. § 6321,

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Under § 6322, this lien arises at the time the assessment is made and continues until the liability for the amount assessed is satisfied or becomes unenforceable by lapse of time, unless another date is fixed by law. 26 U.S.C. § 6322; *see In re Nowicki*, 202 B.R. 729, 740 (N.D. Ill. 1996). This lien, is not valid "as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a). Subsection (f) requires filing such a notice with the Illinois Secretary of State. *Id.* § 6322(f)(1)(A); 770 Ill. Comp. Stat. 110/2(c)(1). The IRS filed this notice on October 4, 2010, creating a perfected lien on M.J. Anderson's property as of this date.

### C.      The Patterson Law Firm

Attorney's liens are governed by the Attorneys Lien Act, 770 Ill. Comp. Stat. 5/1. "Strict compliance [with this statute] is required; '[a]ttorneys who do not strictly comply with the Act have no lien rights.'" *Elusta* v. *City of Chicago*, 760 F. Supp. 2d 792, 804 (N.D. Ill. 2010) (quoting *People* v. *Philip Morris, Inc.*, 759 N.E.2d 906, 911, 198 Ill. 2d 87, 259 Ill. Dec. 845 (2001)). The Act provides in relevant part,

> To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice.

770 Ill. Comp. Stat. 5/1. The Patterson Law Firm submits that it perfected an attorney's lien on the settlement funds for the Lake County Action on or about February 21, 2012 by notifying A.J. Maggio's attorney, Mr. Sullivan, of the lien in writing. (*See* Dkt. #48, Ex. C, Notice of

Attorney's Lien.)  It is unclear from the record, however, whether this notification was made via personal service or registered mail.  *See In re Del Grosso*, 111 B.R. 178, 182 (N.D. Ill. 1990) ("Under the Attorney's Lien Act, the notice must be served by personal service or by registered mail.  These are the only modes of service acceptable under the Attorney's Lien Act.") (internal citation omitted).  Moreover, service of such a notice upon an adversary's attorney is insufficient under the statute.  *See*, *e.g.*, *In re Chicago H&S Property, LLC*, 419 B.R. 797, 801 (N.D. Ill. 2009) ("Illinois law requires an attorney who wishes to assert a statutory lien to give actual notice to the client's adversary in the underlying proceeding. . . .  Service on the adversary's attorney is insufficient to meet this standard.") (citations omitted); *In re Del Grosso*, 111 B.R. at 182 ("Service on a party's attorney is insufficient to perfect the statutory lien.") (citing *Cazalet* v. *Cazalet*, 54 N.E.2d 61, 63, 322 Ill. App. 105 (1944)).  Thus, it is unclear whether the Patterson Law Firm perfected its attorney's lien on or about February 21, 2012.

## II.     Priority

Absent a provision to the contrary, the priority of federal liens is "governed by the common-law principle that 'the first in time is the first in right.'"  *United States* v. *McDermott*, 507 U.S. 447, 449, 113 S. Ct. 1526, 123 L. Ed. 2d 128 (1993) (quoting *United States* v. *City of New Britain*, 347 U.S. 81, 85, 74 S. Ct. 367, 98 L. Ed. 520 (1954)); *see Willow Creek Lumber Co.* v. *Porter Cnty. Plumbing & Heating, Inc.*, 572 F.2d 588, 590 (7th Cir. 1978).  Here, the Carpenters obtained a perfected lien on February 8, 2010 and the IRS obtained a perfected lien on October 4, 2010; thus, the Carpenter's lien is superior.  *See In re Nowicki*, 202 B.R. at 740 ("Under the Internal Revenue Code, IRS liens take priority over a validly perfected judgment

lien *only if* the IRS lien was recorded prior to the point in time when the holder of the competing lien recorded its notice of its lien.") (emphasis added).[5]

The Carpenters also prevail against the Patterson Law Firm, as it is unclear whether the Patterson Law Firm perfected its lien. Even assuming *arguendo* that the Patterson Law Firm had perfected its lien on or about February 21, 2012, it still falls behind the Carpenters's lien under the "first in time" rule. This conclusion is not changed by the operation of 26 U.S.C. § 6323(b)(8), which grants an attorney's lien superpriority over a tax lien, like the one held by the IRS, not a judgment lien like that of the Carpenters. Finally, the common fund doctrine cannot save the Patterson Law Firm's claim because the doctrine does not apply where "the debt paid from the fund existed independently of the creation of the fund." *TM Ryan Co.*, 836 N.E.2d at 811; *see, e.g., Maynard* v. *Parker*, 387 N.E.2d 298, 300, 75 Ill. 2d 73, 25 Ill. Dec. 642 (1979) (declining to apply the common fund doctrine in favor of an attorney who sought to collect part of his fees from a creditor of his client which had asserted a statutory lien on the settlement fund of the litigation); Ronald J. Hennings, *How "Common" is the "Common Fund" Doctrine*, 24 DCBA BRIEF 34, 39 (Oct. 2011) ("A creditor holding a debtor's obligation that is not dependent on the creation of a fund for payment is not subject to the [common fund] doctrine."); *see also Ins. Co. of N. Am.* v. *Norton*, 716 F.2d 1112, 1117 (7th Cir. 1983) ("The allowance of counsel fees from a fund is capable of great abuse, and should be exercised with the most jealous caution in regard to the rights of creditors.") (quoting *Maynard*, 369 N.E.2d at 355).[6]

---

[5] The Carpenters filed a proof of claim in M.J. Anderson's bankruptcy proceeding (Case No. 12-BR-15032) in which they state that they were entitled to "an unsecured nonpriority claim" for the amount of judgment in this case. The court declines to foreclose the Carpenters's relief based on this statement alone. (*See* Dkt. #33, Ex. 1.)

[6] The court does not understand the Patterson Law Firm to argue in favor of an equitable lien.

For the foregoing reasons, the Carpenters are entitled to the disputed settlement funds and their motion for turnover is granted.  The Clerk of this court is ordered to turnover the amount of $30,000 to the Carpenters forthwith.

Date: September 30, 2013

_U.S. District Judge Joan H. Lefkow_